

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> ECONOMIC RELIEF ) <br> TECHNOLOGIES, LLC; SAFERIDE ) <br> WARRANTY, LLC; VP MARKETING, ) <br> LLC; JASON JAMES EYER, KARA ) <br> SINGLETON ADAMS, and JAMES A. ) <br> SCHOENHOLZ, ) <br> ) <br> Defendants. ) | CIVIL ACTION FILE <br><br> NUMBER 1:09-cv-3347-TCB |

## **ORDER**

This matter is before the Court on Defendant Kara Singleton Adams's motion to vacate [100] and Defendant Jason James Eyer's motion to vacate [102][1] the Court's July 22, 2010 judgment and final order [99].

## I. Background

On November 30, 2009, Plaintiff Federal Trade Commission filed its complaint for a permanent injunction and other equitable relief based on

---

[1] The Court addresses the motions together as Adams and Eyer have essentially filed the same motion but with the names changed.

Defendants' unfair and deceptive acts and practices in connection with the marketing and sale of purported credit card interest rate reduction services and automobile warranties. Included with the FTC's complaint was overwhelming evidence that Adams and Eyer were central figures in a $25 million fraud perpetrated upon thousands of consumers. Based on this evidence, the Court issued an ex parte temporary restraining order [8] against all Defendants, including Adams and Eyer, enjoining their wrongful practices and freezing their assets.

On December 2, 2009, personal service on Adams and Eyer was effected by leaving the summons, complaint and other pleadings at their residence with a woman who identified herself as "Kara Adams." On December 11, the pleadings were re-served on Adams and Eyer at their residence by leaving them with Adams's seventeen-year-old niece who also lived at that address.

In addition, the Receiver made numerous attempts to send copies of the pleadings to Adams and Eyer. In December 2009, the Receiver emailed copies of the pleadings to every known email address for Adams, Eyer and their business associates. The Receiver also served copies of the pleadings upon numerous relatives of Adams and Eyer, and he confirmed with those

relatives that they forwarded the pleadings to Adams and Eyer in December 2009. The Receiver also confirmed with Eyer's former counsel that Eyer had received copies of the pleadings in December 2009. Finally, several persons who worked with Eyer in the Philippines confirmed to the Receiver that Adams and Eyer had access to the pleadings while they were in the Philippines.

On December 14, the Court ruled that the FTC had effected proper service of process on Adams and Eyer, and extended the terms of the TRO indefinitely by entering a preliminary injunction order against Defendants [32].

On January 26, 2010, the FTC moved for an entry of default against all Defendants, except Schoenholz who had not yet been served. The next day, the Clerk entered default against Adams, Eyer, and the corporate Defendants. On February 18, Eyer returned from the Philippines, and the Receiver met with him that day, handed him a copy of the pleadings, and discussed the status of the case with him.

On April 20, the FTC perfected service on Schoenholz, and on June 29 moved for an entry of default against him. The next day, the Clerk entered default against Schoenholz.

On July 1, 2010, the FTC filed and properly served its motion for entry of judgment and final order as to all Defendants [91]. On July 22, the Court entered the judgment and final order against all Defendants [99]. On August 4, Adams filed her motion to vacate the judgment and final order [100], and on August 17, Eyer filed his nearly identical motion to vacate the judgment and final order [102].

## II. Discussion

### A. Legal Standard

Adams and Eyer both seek to set aside the judgment and final order pursuant to Fed. R. Civ. P. 54(b), 56(c)(1)(B) and 56(f)(2)-(3). These rules, however, do not apply. Per Fed. R. Civ. P. 55(c), the Court may set aside a default judgment pursuant to Fed. R. Civ. P. 60(b), which provides that a final judgment may be set aside for:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Even though Adams and Eyer have not relied on the proper Federal Rules of Civil Procedure, the Court will still review the merits of their claim based on Rule 60, as the Eleventh Circuit has directed lower courts "to construe liberally the requirements of Rule 60(b) when reviewing default judgments." *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1132 (11th Cir. 1986). *See also U.S. v. Route 1, Box 111, Firetower Rd.*, 920 F.2d 788, 791 n.3 (11th Cir. 1991) (stating that a court can determine the true nature of a motion because it is not bound by a party's nomenclature). It appears that Adams and Eyer are seeking relief under Rule 60(b)(1), (4) & (6).

### B.  Rule 60(b)(1)

In order to set aside a default judgment under Rule 60(b)(1) for mistake, inadvertence, surprise, or excusable neglect, a defendant must show that (1) he had a meritorious defense affecting the outcome of the case; (2) granting his motion would not prejudice the plaintiff; and (3) good reason existed for his failure to reply to the complaint. *Equal Emp't Opportunity Comm'n v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990). The Court's decision is an equitable one, and it must

consider all three elements when making its decision. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1297 (11th Cir. 2003).

### 1. Defendants' Meritorious Defense

The first element the Court must consider is Adams's and Eyer's meritorious defenses. However, neither Adams nor Eyer offers a meritorious defense to the charges in the FTC's complaint. They mainly attempt to defend their failure to respond to the accusations in a timely manner, but this is not "an affirmative showing of a defense that is likely to be successful." *Worldwide Web Systems*, 328 F.3d at 1296.

Although not sufficient to establish a meritorious defense, Adams and Eyer do not even offer general denials of the FTC's accusations. *See Worldwide Web Systems*, 328 F.3d at 1296 (rejecting defendant's defenses because they were "little more than general denials offered only at the highest order of abstraction"); *Sec. & Exch. Comm'n v. Simmons*, 241 Fed. App'x 660, 664 (11th Cir. 2007) (rejecting as a meritorious defense defendant's answer with general denials of plaintiff's allegations). Thus, this element does not weigh in favor of granting their respective motions.

### 2. Prejudice Suffered by the FTC

The second element the Court must consider is the prejudice suffered by the FTC if the Court grants Adams's and Eyer's motions. Adams and Eyer focus on the prejudice they have suffered as a result of the FTC's lawsuit, contending that their lack of resources has severely limited their ability to respond. Thus, they have failed to show that the FTC will not be prejudiced if their motions are granted.

The FTC responds that it will suffer significant prejudice if Defendants are relieved of the judgment against them. It avers that the victims continue to be injured each day final relief is withheld, and a just and speedy resolution that permanently enjoins Defendants' illegal activities effectuates Congress's intent to protect victims from deceptive trade practices. The Court agrees, and finds this element also weighs in favor of denying Adams's and Eyer's motions.

### 3. Good Reason for Delay

The third element the Court must consider is whether Adams and Eyer had good reason for their respective failures to answer the complaint or any of the FTC's filings. In evaluating the moving party's good reason, the Court considers whether the moving party "establish[ed] minimum

procedural safeguards for determining that action in response to a summons and complaint is being taken." *Ehlers*, 8 F.3d at 784; *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 936-37 (11th Cir. 2007). Adams and Eyer claim that they did not respond because they were abroad when the lawsuit was filed and were unable to return and seek legal help due to the asset freeze. They also contend that they did not respond because they were not properly served or informed of hearings, motions and timelines. They do not address how they made efforts to ensure they did properly respond to the FTC's lawsuit.

In response, the FTC contends that numerous efforts were made to serve and provide copies of the pleadings to Adams and Eyer and that it confirmed through several people that they had either received the pleadings or had access to copies thereof. The FTC further avers that any difficulty in returning to the country or obtaining legal help as a result of the asset freeze were circumstances entirely of Adams's and Eyer's own making and do not excuse them from answering or otherwise defending its claims against them.

The Court finds that Adams and Eyer were properly served and thus should have known about the lawsuit against them in December 2009.

Despite being properly served, neither of them responded to the lawsuit for over eight months. While the Court acknowledges that Adams and Eyer are proceeding pro se, and thus are accorded some procedural flexibility, they are still required to adhere both to the Federal Rules of Civil Procedure. Under Fed. R. Civ. P. 12(a)(1)(A)(i), Adams and Eyer had twenty-one days after being served to file an answer or otherwise respond to the FTC's complaint. As stated above, the Court ruled on December 14 that Adams and Eyer had been properly served. They did not respond until August 2010, well after the deadline. Even if the Court delays starting the clock until the day Adams and Eyer each surrendered to federal authorities as a result of criminal charges arising from the FTC's complaint, Adams and Eyer still did not respond in time. Eyer surrendered in February 2010, and Adams in March 2010.

Accordingly, the Court finds that this element does not support Adams's or Eyer's motions. As none of the elements supports granting their motions, Adams and Eyer are not entitled to relief under subsection (1).

### C. Rule 60(b)(4)

As stated above, Adams and Eyer contend that they were not served properly, which prevented them from timely responding to the FTC's complaint and subsequent motions. It is well established that insufficient service of process renders a judgment void because without valid service the Court lacks personal jurisdiction and has no power to render a judgment. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1368 (11th Cir. 1982). Thus, if the Court determines that service was insufficient, it has "no discretion and must grant appropriate Rule 60 relief." *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir. 1986) (quoting *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981)).

The FTC responds that Adams and Eyer were properly served, and consequently, the judgment is not void. As shown from its December 14 ruling, the Court agrees.

Under Fed. R. Civ. P. 4(e)(2)(B), an individual may be served in a judicial district in the United States by leaving a copy of the summons and complaint at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. On December 11, 2009, a

copy of the summons and complaint were left with Adams's seventeen-year-old niece, who is of suitable age and discretion and lived at Adams and Eyer's "dwelling or usual place of abode." This is sufficient to satisfy the service requirements. Accordingly, Adams and Eyer are not entitled to relief under Rule 60(b)(4).

### D.  Rule 60(b)(6)

Rule 60(b)(6) provides that a final judgment may be set aside "for any other reason that justifies relief." "To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). After careful review, the Court finds that Adams and Eyer have not shown extraordinary circumstances suggesting that they are faultless in the delay. They were properly served, and the FTC's evidence suggests that they received numerous copies of the complaint and were aware of the civil suit. Thus, the delay was entirely their fault. As a result, they are not entitled to relief under this subsection and must seek relief under subsection one, which the Court has already determined Adams and Eyer cannot satisfy. *See id.* ("If a party is partly to

blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable.").

## III. Conclusion

The Court hereby DENIES Adams's motion to vacate the judgment and final order [100] and Eyer's motion to vacate the judgment and final order [101].

IT IS SO ORDERED this 28th day of September, 2010.

_____
Timothy C. Batten, Sr.
United States District Judge